UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE RIVERA LARIOS, A-098-920-019, | No. 1:26-cv-1498-DJC-CKD P |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| MINGA WOFFORD, et al., | |
| Respondents. | |

Petitioner Jorge Rivera Larios is detained by Immigrations and Customs Enforcement ("ICE") and seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The petition, respondents' opposition, and Petitioner's reply are before the court. (ECF Nos. 1, 18, 19.) This matter is referred to the undersigned by operation of Local Rule 302(c)(17) pursuant to 28 U.S.C. § 636(b)(1) and the order dated March 31, 2026. (ECF No. 17.) For the reasons set forth below, the undersigned recommends the petition be denied.

## I.   Background[1]

Petitioner Jorge Rivera Larios was born in Mexico and is a resident of California. (Habeas Pet. ("Pet.") (ECF No. 1) ¶ 25.) He fled Mexico in 2017 after he was beaten by the Sinaloa Cartel. (Id.) Petitioner was arrested multiple times in Lake County, California, between 2017 and

---

[1] The undersigned adopts many facts included in the "Background" section set forth by the assigned district judge in a March 18, 2026, order. (See ECF No. 16 at 2-4.)

September 2021, resulting in four convictions as follows: a misdemeanor violation of California Vehicle Code § 14601.5(a); a felony violation of California Health and Safety Code § 11379(a); a probation violation related to the Health and Safety Code conviction; and a felony violation of California Penal Code § 29800(a)(1). (Id. ¶ 26.) On September 29, 2021, immigration authorities detained Petitioner and reinstated a prior removal order under 8 U.S.C. § 1231(a)(5). (Id. ¶ 27.) After an asylum officer determined Petitioner had a reasonable fear of persecution or torture, Petitioner was referred to immigration court for withholding only proceedings. (Id.)

On January 28, 2022, immigration authorities released Petitioner with an order of supervision pursuant to 8 C.F.R. § 241.5(a). (Pet. ¶ 27.) At the time of his release on supervision, Petitioner asserts Respondents were "fully aware of his immigration and criminal history." (Id. ¶ 28.) He was at liberty for three years and nine months and complied with all reporting requirements. (Id. ¶ 29.) He subsequently applied for withholding of removal and deferral of removal under the Convention Against Torture as well as for U nonimmigrant status, a visa for certain crime victims. (Id. ¶¶ 30–31.)

During his release, Petitioner married his U.S. citizen wife and together they had a son. (Pet. ¶ 34.) Petitioner's wife battles alcoholism and has been verbally and physically abusive on occasion. (Id. ¶ 35.) In August 2025, she became violent and Petitioner called the Lake County Sheriff's Office. (Id. ¶ 36.) The Lake County Sheriff detained Petitioner and released him the next day and allegedly provided a "detention certificate." (Id.) Subsequently, on October 14, 2025, Petitioner was detained by immigration authorities during his check in at the San Francisco ICE field office, where an officer informed him that he was being arrested because he had contact with law enforcement in August 2025 and had violated his order of supervision. (Id. ¶ 37.)

On October 14, 2025, Petitioner filed a petition for writ of habeas corpus in the Northern District of California. See Larios v. Albarran, No. 25-CV-08799-AMO, 2025 WL 3043391, at *1 (N.D. Cal. Oct. 31, 2025). The district judge in the Northern District of California granted a temporary restraining order (TRO) for Petitioner's immediate release on October 15, 2025, and granted a preliminary injunction on October 31, 2025. (Id.) The preliminary injunction ordered "Respondents are ENJOINED AND RESTRAINED from re-detaining Rivera Larios without

2

notice and a pre-deprivation hearing before an Immigration Judge to evaluate whether his re-detention is warranted based on flight risk or a danger to the community." Id. at *10.

On November 3, 2025, Petitioner and his counsel appeared in immigration court for a pre-deprivation hearing. (Pet. ¶¶ 45–46.) The Immigration Judge (IJ) issued alternate findings. (Transcript ("Tr.") (ECF No. 2–4) at 42:8.) The IJ first found that if the hearing had been a custody redetermination hearing, the court would have no jurisdiction to address bond. (Tr. 42:8–14.) The IJ alternately found that if the hearing were a 236(a) discretionary bond hearing, then "based on the criminal convictions, the Court would find that the respondent is a danger to the community." (Id. at 42:16–19.) The IJ also found Petitioner was a flight risk. (Id. at 44:17.) The IJ also found Petitioner did not violate the conditions of his release. (Id. at 45:16–17.) The IJ denied bond and stated the determination whether Petitioner would be re-detained would be made by immigration authorities. (Id. at 45:11–12; 46:10–47:5.)

After leaving the pre-deprivation hearing on November 3, 2025, Petitioner was re-detained by immigration authorities. (Pet. ¶ 50.) He remains in custody. (Id. ¶ 5.)

On November 7, 2025, Petitioner filed a motion to enforce the Northern District's preliminary injunction. (Pet. ¶ 52.) The motion was denied. (Id.) Petitioner filed a motion for leave to amend his petition for writ of habeas corpus in the Northern District and following briefing on the motion to amend, Respondents filed a notice of appeal of the preliminary injunction. (Id. ¶ 53.) On January 21, 2026, the parties filed stipulations to dissolve the preliminary injunction and to dismiss the petition. (Id. ¶ 55.) The district court dissolved the preliminary injunction and dismissed the case on January 26, 2026. (Id. ¶ 56.) The parties also stipulated to dismiss the appeal, and, on January 27, 2026, the Ninth Circuit dismissed the appeal. (Id.)

On February 20, 2026, Petitioner filed the petition for writ of habeas corpus now pending in this court along with a motion for TRO. (ECF Nos. 1, 2.) The district judge assigned to this case denied the motion for TRO on March 18, 2026. (ECF No. 16.)

In the pending petition, Petitioner asserts three claims as follows: (1) violation of 8 U.S.C. § 1231(a); (2) violation of substantive due process under the Fifth Amendment of the United

States Constitution; and (3) violation of procedural due process under the Fifth Amendment of the United States Constitution. (ECF No. 1.) Petitioner's reply is also before the court. (ECF No. 19.)

Respondents filed an answer to the petition. (ECF No. 18.) According to Respondents, "[t]he only update [to the background facts set forth in the Court's order denying the TRO] is that on February 23, 2026, the immigration court denied Petitioner's applications for withholding of removal and deferral of removal under the Convention Against Torture. Petitioner timely appealed the denial of these applications to the Board of Immigration Appeals. The appeal remains pending. Petitioner was recently transferred to the Golden State Annex." (Id. at 2.)

## II.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## III.    Discussion

### A.  INA and Substantive Due Process

As Petitioner's final removal order was reinstated and he was placed in "withholding-only" proceedings, he is detained under 8 U.S.C. § 1231(a). See 8 U.S.C. § 1231(a)(5); Johnson v. Guzman Chavez, 594 U.S. 523, 530-32 (2021) (detailing withholding-only procedures); Padilla-Ramirez v. Bible, 882 F.3d 826, 832 (9th Cir. 2017) (explaining that reinstated removal orders are administratively final for purposes of detention, even if there are ongoing withholding-only proceedings). Noncitizens who have final removal orders "shall" be detained for the first 90 days after their removal orders are finalized (known as the "removal period"), 8 U.S.C. § 1231(a)(2), and "may be detained beyond the removal period," id., § 1231(a)(6). A non-citizen released after the removal period shall be subject to supervision under regulations prescribed by

4

the Attorney General pending removal. Id., § 1231(a)(3). If there is no significant likelihood that a foreign government will accept the noncitizen's return in the reasonably foreseeable future, the government may not detain the noncitizen for more than the presumptively reasonable period of six months. Zadvydas, 533 U.S. at 701.

Petitioner asserts his re-detention cannot be justified under 8 U.S.C. § 1231(a) because there were no materially changed circumstances after his release on an order of supervision on January 28, 2022. (ECF No. 19 at 7-8.) "Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13." Uzzhina v. Chestnut, No. 1:25-CV-01594-DAD-SCR, 2025 WL 3458787, at *3 (E.D. Cal. Dec. 2, 2025) (citing Bui v. Warden of the Otay Mesa Det. Facility, No. 25-cv-2111-JES-DEB, 2025 WL 2988356, at * 2 (S.D. Cal. Oct. 23, 2025)). Respondents contend Petitioner's release "was revoked pursuant to 8 C.F.R. §241.1(l)((2)(iv)[.]" (ECF No. 18 at 7.) However, it appears Respondents are referring to § 241.4(l)(2)(iv) because § 241.1 does not have subsections and does not address revocation of release.

8 C.F.R. § 241.4(l)(2) provides in relevant part:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody [a noncitizen] previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official… (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2)(iv).

Petitioner's Notice of Revocation of Release was signed by Sergio Albarran, Field Office Director. (ECF No. 18-2.) After March 1, 2023, a Field Office Director has the authority delegated to a district director. See 8 C.F.R. § 1.2; M.S.L. v. Bostock, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *9 (D. Or. Aug. 21, 2025) (noting a field office director is a position with authority to revoke).

////

5

Petitioner's Notice of Revocation stated the following, in relevant part:

> ICE determined you can be expeditiously removed from the United States (U.S.) pursuant to the outstanding order of removal against you. On September 29, 2021, ICE served you a Notice of Intent/Decision to Reinstate your Prior Order, Form I-871, and you claimed fear of returning to your country of citizenship. On January 28, 2022, you were released on an Order of Supervision (OSUP), Form I-220B, pending your withholding only proceedings with EOIR. On October 14, 2025, you were arrested and your OSUP revoked because you violated your OSUP conditions. On the same date, you were released due to a Temporary Restraining Order (TRO) issued by a U.S. District Court, Northern District of California. On October 29, 2025, the TRO expired. On November 3, 2025, the IJ held a pre-deprivation hearing and confirmed you are a danger to the community.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.1, you are to remain in ICE custody at this time.

(ECF No. 18-2 at 1.) A "Proof of Service" for the Notice of Revocation indicates the Notice was served to Petitioner on November 4, 2025, and signed the Notice. (ECF No. 18-2 at 2.)

Petitioner argues the Notice of Revocation of Release is a post-hoc attempt to justify his detention. (ECF No. 19 at 7.) Petitioner does not, however, assert Mr. Albarran, as Field Office Director, lacked authority to revoke his release under 8 C.F.R. § 241.4(l)(2)(iv) as a matter of discretion. Petitioner does not assert the Notice failed to inform him of the reasons for the revocation or that he was denied an opportunity for a prompt "initial informal interview... to respond to the reasons for revocation stated in the notification." Id., § 241.4(l)(1). Petitioner does not assert any specific reasons why revocation of his release was unauthorized under 8 C.F.R. § 241.4(l)(2)(iv). Petitioner fails to show his present detention is unauthorized by 8 U.S.C. § 1231(a) following revocation of his supervised released by a Field Office Director pursuant to 8 C.F.R. § 241.4(l)(2)(iv).

Mr. Albarran's determination that release is no longer appropriate does not mean Petitioner's detention is permissible indefinitely under 28 U.S.C. § 1231(a)(6). As found by the Supreme Court in Zadvydas via the canon of constitutional avoidance, there is "an implicit limitation" on § 1231(a)(6) to a period of detention reasonably necessary to bring about the noncitizen's removal from the United States. 533 U.S. at 689. The presumptively reasonable timeframe for detaining a noncitizen is six months after issuance of a final removal order. Id. at

6

701. "After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Petitioner asserts there is no reasonable likelihood he will be removed in the foreseeable future (ECF No. 1 at 28) and notes he completed six months of detention on May 3, 2026 (ECF No. 19 at 7). Petitioner does not, however, assert any specific reasons why his removal is not likely to occur in the reasonably foreseeable future. Respondents argue that given his multiple prior removals to Mexico and the IJ denying his applications for relief, he will soon be removed to Mexico if the Board of Immigration Appeals affirms the IJ's order. (ECF No. 18 at 8.)

No party submits evidence or argument concerning the status of Petitioner's appeal to the Board of Immigration Appeals, how long it is likely to take, or what will happen upon its conclusion. The existence of that appeal, standing alone, does not make the required showing under Zadvydas even though petitioner has now been detained for more than six months. See Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir. 2008) ("Although his removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, he is not stuck in a 'removable-but-unremovable limbo,' as the petitioners in Zadvydas were."); M.S.C.R. v. Lyons, No. 1:26-CV-00594-DJC-EFB, 2026 WL 607998, at *2 (E.D. Cal. Mar. 4, 2026) (initial burden under Zadvydas was not met where the petitioner did not present any good reason to believe the government would be unable to remove him at the conclusion of the withholding proceedings, regardless of result).

Relevant here, the record reflects Petitioner has been removed to Mexico, his native country, on five prior occasions. (ECF No. 18-1 at 3.) There is no indication Petitioner cannot be removed to Mexico at the conclusion of the appeal. Petitioner fails to show his detention has become unauthorized because there is no significant likelihood of his removal in the reasonably foreseeable future. C.f. Prieto-Romero, 534 F.3d at 1063 (rejecting claim and noting "no evidence that Prieto–Romero is unremovable because the destination country [Mexico] will not accept him or his removal is barred by our own laws").

////

7

Petitioner also argues his detention is punitive in violation of substantive due process based on his conditions of confinement and because detention is not reasonably related to preventing danger or flight risk. (ECF No. 1 at 9; ECF No. 19 at 2-5.) The substantive component of the Due Process Clause "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process was provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301-02 (1993).

Petitioner alleges he became ill, was physically assaulted, threatened with sexual assault, and placed in the Restricted Housing Unit for his safety, which are conditions that reflect the punitive nature of his detention at Mesa Verde ICE Processing Center. (Pet. ¶ 90.) In addition, upon arrival at Golden State Annex on April 23, 2026, officers wanted to dislocate Petitioner's finger and hand to remove a stuck handcuff, but were eventually able to remove it with bolt cutters. (ECF No. 19-1 ¶¶ 8-9.) Petitioner slept on the floor of the kitchen the first night at Golden State Annex without a sleeping mat or blanket. (Id. ¶ 9.)

Respondents assert the habeas petition is not a proper method to challenge Petitioner's conditions of confinement. (ECF No. 18 at 2.) However, Petitioner makes clear the arguments about his conditions of confinement are raised in the context of a substantive due process claim based on the punitive nature of his detention. (ECF No. 19 at 2.) Whether Petitioner's civil detention is unconstitutionally punitive is a question that sounds in habeas because it concerns the "legality" of confinement. See Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991).

"The Supreme Court held more than a century ago that civil detention of a removeable noncitizen violates the Constitution if it is punitive." Doe v. Becerra, 732 F. Supp. 3d 1071, 1078 (N.D. Cal. 2024) (citing Wong Wing v. United States, 163 U.S. 228, 237-38 (1896)); see also United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (holding in the criminal context that a due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention is excessive in relation to its regulatory purpose).

Detention during deportation proceedings is a constitutionally valid aspect of the process. Demore v. Kim, 538 U.S. 510, 523 (2003). Although Petitioner argues his detention is punitive

because it is without justification (ECF No. 19 at 4), he is ordered removed and lawfully detained under 8 U.S.C. § 1231(a). The government has significant interests in detaining Petitioner pending removal and those interests only increase as time passes. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022).

Moreover, the record lacks evidence allowing comparison of Petitioner's overall conditions of confinement compared to individuals in criminal custody. See Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 649 (9th Cir. 2021) (rejecting claim where "[t]he record lacks evidence from which to draw any relevant comparisons between the overall conditions of confinement of ICE detainees as compared to those in criminal custody"). Petitioner has not shown his detention serves no regulatory purpose or that it is excessive in relation to its regulatory purpose. See Torres, 995 F.3d at 708. Petitioner fails to demonstrate his detention is punitive in violation of due process.

### B. Procedural Due Process

Petitioner also claims his November 3, 2026 pre-deprivation hearing did not comport with procedural due process because the IJ was not a neutral arbiter and erroneously considered risk of danger and flight risk based on facts that predated his release in 2022. (ECF No. 1 at 30.) Respondents contend Petitioner failed to exhaust administrative remedies by appealing to the Board of Immigration Appeals. (ECF No. 18 at 9-10.)

The federal habeas statute under which petitioner proceeds does not itself require exhaustion of administrative remedies. 28 U.S.C. § 2241. Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted). Exhaustion may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

Relief from the prudential exhaustion requirement is warranted in this case. It is unclear whether the Board of Immigration Appeals could evaluate Petitioner's due process challenge to the IJ's determination made pursuant to the Northern District of California's preliminary injunction order which has since been dissolved. Moreover, the IJ specifically stated the hearing was a "theoretical bond hearing with no force and effect at this point, so there's no appellate rights that are attaching to this." (Tr. 46:1-3.) Exhaustion of administrative remedies should be deemed waived in this case. See Hernandez v. Sessions, 872 F.3d 976, 988-89 (9th Cir. 2017) (affirming district court decision to waive exhaustion requirement in constitutional challenge to detention hearings).

Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). Assuming Petitioner has a protected liberty interest in his supervised release, he fails to show the government denied him adequate procedural protections.

As set forth above, a Field Office Director revoked Petitioner's supervision pursuant to 8 C.F.R. § 241.4(l)(2)(iv) which referenced and relied on the IJ's findings at the November 3, 2025 pre-deprivation hearing. In constitutional challenges to an Immigration Judge's bond determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024). This type of review does not involve reweighing evidence, but rather, determining whether the Immigration Judge "applied the correct legal standard." Id. at 785 (citation and quotations omitted); see also Quan v. Barr, No. 20-cv-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (citation omitted) ("In reviewing the IJ's determination... review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'").

As set forth above, the IJ made alternate findings, stating the IJ would find no jurisdiction to address bond to the extent the hearing was being conducted as a custody redetermination hearing, and alternately would find Petitioner is a danger to the community and a flight risk to the

10

extent the hearing was being conducted as a discretionary bond hearing. Petitioner does not assert the IJ applied the wrong standard. For the reasons stated in the district judge's order denying Petitioner's motion for temporary restraining order (ECF No. 16 at 6-8), the undersigned agrees "the Immigration Judge applied the correct standard of proof for both types of hearings — a § 1226(a) hearing and a custody redetermination hearing[.]" (Id.)

Petitioner challenges the sufficiency of the evidence, arguing the IJ erroneously based the decision on facts that predated Petitioner's release in January of 2022 and failed to consider evidence demonstrating he is not a danger or a flight risk. (ECF No. 1, ¶ 149; ECF No. 19 at 12.) However, the IJ stated she had "read and considered all the filings." (Tr. 19:6.) "The fact that the IJ did not mention the evidence specifically in her decision does not overcome the presumption that the IJ satisfied the due process requirement to consider such evidence." Perez v. Wolf, 445 F. Supp. 3d 275, 290 (N.D. Cal. 2020) (citing Larita-Martinez v. INS, 220 F.3d 1092, 1096 (9th Cir. 2000) and Cole v. Holder, 659 F.3d 762, 771 (9th Cir. 2011) ("That is not to say that [the IJ] must discuss each piece of evidence submitted. When nothing in the record or the [IJ's] decision indicates a failure to consider all the evidence, a general statement that [the IJ] considered all the evidence ... may be sufficient." (quotation marks and citation omitted)).

Petitioner argues "the IJ failed to consider whether there were any materially changed circumstances since [Petitioner's 2022] release from custody on an order of supervision…." (ECF No. 19 at 10.) Petitioner's counsel at the pre-deprivation hearing urged the IJ to focus on that issue as dispositive of the hearing's outcome and argued Petitioner could only be re-detained if there were materially changed circumstances since his release or if he had violated a condition of release. (Tr. at 38:6-9.)

Where an individualized assessment of flight risk and dangerousness has been made and bond granted, courts follow the Board of Immigration Appeals in requiring a "material change of circumstances" before bond can be revoked or modified. Duong v. Kaiser, 800 F. Supp. 3d 1030, 1042 (N.D. Cal. 2025) (citing Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981)). Petitioner does not allege there was any previous finding regarding his danger to society or flight risk. Petitioner's counsel at the pre-deprivation hearing noted Petitioner had been released on an order

11

of supervision "without the need to pay a bond[.]" (Tr. 28:25-29:1.) Counsel for the government at the pre-deprivation hearing represented Petitioner's release occurred "because of COVID-19 risk factors" rather than any official finding regarding danger to society or a flight risk. (Tr. 38:19-24.)

Petitioner fails to show the IJ committed clear legal error by not basing the decision on whether there were any materially changed circumstances since his 2022 release. As determined by the assigned district judge in denying the motion for temporary restraining order in this case, the IJ relied on petitioner's criminal history and considered the totality of his convictions and did not rely on the August 2025 contact with law enforcement. (Tr. 43:16-44:11.) The IJ also found Petitioner's 2021 criminal convictions were "relatively recent." (Tr. 44:10-11.) The IJ properly considered Petitioner's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses[.]" In Re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's disagreement is with how the IJ weighed the evidence, but this court may not second guess the IJ's weighing of the evidence. See Martinez, 124 F.4th at 784. For all these reasons, Petitioner fails to show his procedural due process rights were violated in connection with the November 3, 2025 pre-deprivation hearing.

**IV.    Recommendation**

For the reasons set forth above, IT IS RECOMMENDED as follows:

1.  JORGE RIVERA LARIOS' (A-098-920-019) petition for writ of habeas corpus under 28 U.S.C. § 2241 be denied.

2.  The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 19, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8 lari1498.mer